UNITED STATES DISTRICT COURT DISTRICT OF
CONNECTICUT

UNITED STATES OF AMERICA *ex rel*,
PETER J. BONZANI, JR.

     Plaintiff,

           v.

UNITED TECHNOLOGIES CORP. and
PRATT & WHITNEY

      Defendant.

No. 3:16-CV-01730 (AVC)

## RULING ON
## DISCOVERY MOTIONS

Plaintiff/Relator Peter J. Bonzani, Jr. ("Bonzani") filed suit, on behalf of the United

States of America, under the False Claims Act, ("FCA"), section 3729 *et seq.* of title 31 of the

United States Code, against United Technologies ("UTC") and Pratt and Whitney ("Pratt")

(collectively "Defendants"). *See* ECF No. 96, Fourth Amend. Complaint ("FAC"). Plaintiff

alleges three claims in the Fourth Amended Complaint against Defendants. In Counts One and

Two, Bonzani alleges that the defendants violated the FCA by (1) knowingly or recklessly

presenting, or causing to be presented, false or fraudulent claims for payment to the United

States; and (2) making, using, or causing to be made or used, a false record or statement in

seeking payment from the government. *See* 31 U.S.C. §3729(a)(1)(A)-(B); FAC ¶¶473, 478. In

Count Three, Bonzani alleges that Pratt terminated his employment in retaliation for engaging in

protected activity under the FCA. *See* FAC ¶484.

1

## I.    PROCEDURAL BACKGROUND

On April 19, 2019, Judge Hall denied defendants' Motion to Dismiss Count Three of the Third Amended Complaint and granted defendants' Motion to Dismiss Counts One and Two with leave to replead. (ECF No. 95 at 11). Bonzani subsequently filed a Fourth Amended Complaint. On November 6, 2019, Judge Hall denied Defendants' Motion to Dismiss Counts One and Two. (ECF No. 113). A Scheduling Order was entered on December 20, 2019. (ECF No. 117).

The case was transferred to Judge Covello on January 2, 2020. (ECF No. 119). On June 4, 2020, Judge Covello entered an Amended Scheduling Order. Currently the deadline for completion of discovery is December 31, 2020; dispositive motions are due on January 29, 2021; and the joint trial memorandum is due on February 26, 2021. (ECF No. 167).

On March 10, 2020, Plaintiff filed four Motions to Compel (ECF Nos. 136, 137, 138, and 139), pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). Plaintiff filed memoranda in support on April 13, 2020. (ECF Nos. 147, 148, 149, 150, 151, 152, 153). Defendants filed their response on April 21, 2020. (ECF Nos. 157, 158). Reply briefs were filed on June 2, 2020. (ECF Nos. 165, 166). On September 24, 2020, Judge Covello referred this case for a discovery conference and for a ruling on the pending discovery motions. (ECF No. 175, 177).

The Court requested letters with a proposed agenda outlining the issues to be discussed during a discovery conference that were submitted on October 5, 2020. (ECF No. 176). A discovery conference was held on October 13, 2020. At the conclusion of the conference the Court requested additional letter briefs, that were submitted on October 23, 2020.

## II.    STANDARD OF REVIEW - FEDERAL RULE OF CIVIL PROCEDURE 26(b)

**(b)  Discovery Scope and Limits.**

> **(1) *Scope in General.*** Unless otherwise limited by court order, the scope of
> discovery is as follows: Parties may obtain discovery regarding any nonprivileged
> matter that is relevant to any party's claim or defense and proportional to the
> needs of the case, considering the importance of the issues at stake in the action,
> the amount in controversy, the parties' relative access to relevant information, the
> parties' resources, the importance of the discovery in resolving the issues, and
> whether the burden or expense of the proposed discovery outweighs its likely
> benefit. Information within this scope of discovery need not be admissible in
> evidence to be discoverable.

Fed. R. Civ. P. 26. The Advisory Committee's notes to the 2015 amendment of Rule 26

further explain:

> A party claiming that a request is important to resolve the issues should be able to
> explain the ways in which the underlying information bears on the issues as that party
> understands them. The court's responsibility, using all the information provided by
> the parties, is to consider these and all the other factors in reaching a case-specific
> determination of the appropriate scope of discovery.

*Id.,* Advisory Committee's Note to 2015 Amendment.

"Even after the 2015 amendments, '[r]elevance is still to be construed broadly to

encompass any matter that bears on, or that reasonably could lead to other matter that

could bear on any party's claim or defense.'" *Bagley v Yale Univ.*, No. 3:13-cv-01890

(CSH), 2015 WL 8750901, *7 (D. Conn. Dec. 14, 2015) (quoting *State Farm Mut. Auto.*

*Ins. Co. v. Fayda,* No. 14 Civ. 9792, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015)).

Once the party seeking discovery has demonstrated relevance, "[t]he objecting party bears

the burden of demonstrating specifically how, despite the board and liberal construction

afforded [by] the federal discovery rule, each request is not relevant or how each question

is overly broad, unduly burdensome or oppressive." *Klein v. AIG Trading Grp.*, 228 F.R.D.

418, 422 (D. Conn. 2005) (internal alterations and quotation marks omitted).

Under Rule 26(b)(1), as amended, "the Court must [also] determine whether the discovery

sought is proportional to the needs of the case," and is permitted to limit certain discovery that is "not proportional" "[e]ven if relevant to the case." *Hybrid Athletics, LLC v. Hylete, LLC,* No. 3:17-cv-1767 (VAB), 2019 WL 4143035, at *10 (D. Conn. Aug. 30, 2019) (quoting *Metcalf v. Yale Univ.*, No. 3:15-cv-1696 (VAB), 2017 WL 6614255, at *2 (D. Conn. Dec. 27, 2017)). "The proportionality determination limits the scope of discovery by considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the importance of discovery in resolving the issues, and whether the burden or expense outweighs the likely benefit of the discovery sought." *Taveras v. Semple*, No. 3:15-cv-531 (VAB), 2020 WL 3489529, at *7 (D. Conn. June 27, 2020) (quoting *Ceraldi v. Strumpf*, No. 3:17-cv-1628 (JCH), 2019 WL 5558472, at *1 (D. Conn. Oct. 29, 2019) (quoting Fed. R. Civ. P. 26(b)(1)  (internal alterations and quotation marks omitted)).

The district court has "wide latitude to determine the scope of discovery."  *In Re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008); *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) ("Motions to compel are left to the court's sound discretion."); *see also Favale v. Roman Catholic Diocese of Bridgeport*, 235 F.R.D. 553, 558 (D. Conn. 2006) ("The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." (quoting *Yancey v. Hooten*, 180 F.R.D. 203, 207 (D. Conn. 1998) (internal quotation marks omitted)).

## III.   DISCUSSION

## A.  PLAINTIFF'S "OVERARCHING" MOTION TO COMPEL (ECF No. 136)

Plaintiff moves the Court to address "overarching deficiencies" in the discovery responses from Defendant and to compel complete responses to interrogatories and requests for production The Court addresses each of the "overarching" issues identified by Plaintiff in turn.

### 1.  Boilerplate Objections-Argument IV(A)

The Court agrees that Defendant's generalized boilerplate objections set forth in response to Bonzani's First, Second, Third and Fourth Sets of Requests for Production, answers to interrogatories and responses to Request for Inspection are neither useful or helpful. Plaintiff directs the Court to Exhibits 4, 6, 8, 17 and 26-28, to demonstrate Defendant's "liberal and reflexive use" of boilerplate responses to discovery requests.

As a general matter, Defendant's blanket objections on the grounds of proportionality, burden and breadth are overruled. Defendants shall produce all responsive documents withheld on this basis and produce a log of all documents withheld on the basis of privilege or national security grounds within thirty (30) days, in accordance with D. Conn. L. R. Civ. P 26(e).

The Court notes, however,  that Defendant has also asserted objections and articulated the reasons why the discovery should be limited and/or may be privileged and/or should be denied. The Court will address those objections specifically as raised in this motion and the three other pending Motions to Compel. To the extent that the parties seek clarification and/or resolution of a matter not addressed in this ruling, they are directed first to confer and then, if necessary, raise the issue in a discovery conference with reference to the specific interrogatory, request for production and/or request for inspection, in accordance with the D. Conn. L. Civ. P. Rule 37(b)(1).

### 2.  Documents Withheld as Irrelevant and/or Classified-Argument IV(B)

Similarly, Plaintiff objects to generalized objections to discovery on the basis of relevance and/or on the grounds that the responsive document is "classified." As set forth above, generalized

relevance objections are overruled. The Court will consider particularized objections on relevance grounds. Defendants are directed to produce a privilege log identifying the documents it asserts are "classified" and must be withheld within thirty (30) days, in accordance with D. Conn. L. R. Civ. P. 26(e). Defendant will state whether the classified documents yet to be produced relate to the F135 engine which is no longer a part of Plaintiff's case. (ECF No. 157 at 33).

The Court notes that Defendant has also asserted objections and articulated the reasons why the discovery should be limited and/or may be classified and/or should be denied. The Court will address those objections specifically as raised in this motion and the three other pending Motions to Compel. The parties will meet and confer to discuss the discovery at issue in accordance with D. Conn. L. Civ. R. 37(a). If an agreement cannot be reached, the Court will hear the parties on this issue during a discovery conference and not through additional motion practice.

To the extent that the parties seek clarification and/or resolution of a matter not addressed in this ruling, they are directed first to confer and then, if necessary, raise the issue in a discovery conference with reference to the specific interrogatory, request for production and/or request for inspection, in accordance with the D. Conn. L. Civ. P. Rule 37(b)(1).

### 3. Defendant's "Redefinitions" of Bonzani's Terms-Argument IV(C)

Plaintiff next objects to Pratt's re-definition of Bonzani's terms. Defendant asserts that the objections are specific, targeted and appropriate.

### a. "Defendant" "You" and "Your"

Plaintiff argues that "Defendant must provide discovery within its possession, custody or control." (ECF No. 136 at 21). Pratt objects to Bonzani's definition of "Defendant", "You", and "Your" contained in the discovery requests to the "extent that they encompassed 'agents, contractors, subcontractors, counsel, and any other persons or entities outside of Defendant's control or whose documents are not in Defendant's possession." (ECF No. 157 at 39). Nevertheless, Pratt

states that the purpose of the "objection was simply to clarify that Pratt's discovery obligations extend only to documents within its 'possession, custody, or control.'" *Id.* Accordingly, this issue appears to be resolved. To the extent that the parties seek clarification and/or resolution of a matter not addressed in this ruling, they are directed first to confer and then, if necessary, raise the issue in a discovery conference with reference to the specific interrogatory, request for production and/or request for inspection, in accordance with the D. Conn. L. Civ. P. Rule 37(b)(1).

### "Test Rig" "New Test Rig" "Old Test Rig"

Plaintiff next state that Pratt "simply ignored and dismissed Bonzani's definitions of **"New Test Rig"** and **"Old Test Rig"** without explanation." (ECF No. 136 at 20). In Plaintiff's Third Requests for Production, the definition of "'New Test Rig' means any Test Rig(s) that was used from October 15, 2015 through the present "and "'Old Test Rig' means any Test Rig(s) that was used from October 1, 2010 until October 15, 2015."*Id.* Ex. 3 ¶¶17-18.

Pratt states that its "changes to the definition of 'test rig,' and to the terms 'New Test Rig' and 'Old Test Rig,' were necessary in order to provide any coherent response" because "there is no distinction between 'new test rigs' and 'old test rigs' for the equipment in question at Pratt's Middletown facility." (ECF No. 157 at 39). In support, Defendant appended the affidavit of James Tanguay, Manufacturing Engineer at Pratt's Middletown facility, who states that "All stands, tables, and other test fixtures used for spraying sample test pieces today are the same equipment as that which was in use from 2012 to 2015. None of that equipment has been dismantled or destroyed, and it remains in use to this day." *Id.* Ex. 19 (Tanguay Aff.). "The only change is that test blocks are periodically cleaned or swapped out 'for new blocks of the same type and part number' as they become worn out." *Id.* (quoting Tanguay Aff. ¶5). Tanguay further stated that "worn-out blocks dating back to the November 2015 period," are in storage and were turned over to Pratt's legal department. *Id.* (Tanguay Aff. ¶7).

7

Accordingly, Plaintiff's objection to Pratt's "redefinition" is overruled. Plaintiff can inquire into Defendant's rigs during the "relevant time period" through depositions of Pratt's employees, including James Tanguay. To the extent that the parties seek clarification and/or resolution of a matter not addressed in this ruling, they are directed first to confer and then, if necessary, raise the issue in a discovery conference with reference to the specific interrogatory, request for production and/or request for inspection, in accordance with the D. Conn. L. Civ. P. Rule 37(b)(1).

### b. "Escape"

In Plaintiff's Third Requests for Production, the definition of "'Escapes' means hardware that is non-conforming to specifications that has left the work cell or facility." *Id.* Ex. 3 . Pratt states that it does not intend "to engage in 'gamesmanship' or to avoid providing discovery about any 'non-conforming hardware that has left the work cell or facility,' but rather to accurately reflect the meaning of the term 'escape' as it is used by Pratt and in Pratt's documents." (ECF No. 158 at 39). This distinction is reasonable and explains Pratt's understanding of the term in use by its employees in responsive documents.

Accordingly, Plaintiff's objection to Pratt's "redefinition" is overruled. To the extent that the parties seek clarification and/or resolution of a matter not addressed in this ruling, they are directed first to confer and then, if necessary, raise the issue in a discovery conference with reference to the specific interrogatory, request for production and/or request for inspection, in accordance with the D. Conn. L. Civ. P. Rule 37(b)(1).

### 4. Discovery on F135 Engines-Argument IV(D)

Plaintiff has withdrawn all discovery requests and claims relating to the F135 engine and F-35 aircraft. *See* ECF No. 168 (Uncontested Motion to Strike). Accordingly, this issue is moot.

### 5. Request to Expand the Date Range for ESI Searches-Argument IV(E)

Pratt urges the Court to review the Fourth Amended Complaint and reject Plaintiff's efforts to

expand discovery to cover the time period from October 1, 2010 through the present. Def. Let. Dated 10/23/20 at 3. The Fourth Amended Complaint contains allegations that the False Claims Act violations for which Plaintiff seeks to recover occurred "from at least 2012 through at least November 2016." (ECF No. 96, FAC ¶¶2, 20, 37, 40, 43). After a meet and confer, Pratt "subsequently agreed to expand the relevant time period to October 31, 2016." Def. Brief at 11. Additionally, Defendant "agreed to produce specific, categorical documents that fall outside that range," Def. Brief at 11,  relevant to relator's claims but objects to a generalized  expansion of the scope of Pratt's ESI search and review all the way back to 2010 and forward to the present as disproportionate and unduly burdensome. Def. Let. Dated 10/23/20 at 3. Defendant asks the Court to "decline to more than double the length of that time period and subject Pratt to this additional burden and expense," Def. Let. Dated 10/23/20 at 3, of reviewing and producing all of this extraneous data outweighs the potential for identifying significant amounts of probative, discoverable evidence. Def. Brief at 18.

Judge Hall declined to rule on the applicable FCA statute of limitations in her ruling on the Motion to Dismiss the Fourth Amended Complaint. (ECF No. 113 at 19-20).  She found that "[t]he FCA has a six-year limitations period, which 'begins to run on the date the claim is made, or, if the claim is paid, on the date of payment." *Id. at 19* (quoting *United States ex rel. Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1157 (2d Cir. 1993).  Bonzani contends that his claims are limited only by the FCA's ten-year statute of repose. *Id.* (citing 31 U.S.C. §3731(b)). Bonzani filed this lawsuit on October 18, 2016. As found by Judge hall, discovery relating back to 2010 would be within the shorter six-year limitations period. *See* ECF No. 113 at 20. Discovery dating to 2010 is not limited by the allegations in the Fourth Amended Complaint or by the statute of limitations.  Importantly, Plaintiff seeks targeted discovery "so as to compare the testing and testing result prior to his discovery of the fraudulent testing." Pl. Reply at 11.  Defendant states that it "has in fact agreed to

conduct targeted searches for pre-2012 documents when relevant to relator's claims" but objects to "a generalized expansion of the scope of its ESI search and review all the way back to 2010 and forward to the present." Def. Brief at 27. The parties will meet and confer to discuss the scope of targeted discovery, as defined by Plaintiff above, in accordance with D. Conn. L. Civ. R. 37(a). If an agreement cannot be reached, the Court will hear the parties on this issue during a discovery conference before additional motion practice.

Regarding the request for discovery from October 31, 2016 through the present, Plaintiff argues it is "entitled to discover information on the changes made to the testing procedures after Relator exposed the fraud, and to discover communications by, to and among Defendant employees discussing the fraudulent testing." Pl. Reply at 11. Defendant argues, and the Court agrees, that

> The simple inclusion of a cursory allegation that the Defendants' conduct is ongoing—made on information and belief only and without any of the specificity mandated by Federal Rule of Civil Procedure 9(b)—does not automatically entitle Plaintiff to obtain expansive discovery to the present of all of Defendants' practices in order to uncover new false claims.

*U.S. ex rel. Spay v. CVS Caremark Corp.*, No. CIV.A. 09-4672, 2013 WL 4525226, at *3 (E.D. Pa. Aug. 27, 2013); *see U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.,* 198 F.R.D. 560, 564 (N.D. Ga.2000), *aff'd* 290 F.3d 1301 (11th Cir. 2002), *cert. denied,* 537 U.S. 1105, 123 S. Ct. 870, 154 L.Ed.2d 774 (2003) ("The particularity requirement of Rule 9(b), if enforced, will not only protect defendants against strike suits, but will result in claims with discernable boundaries and manageable discovery limits.").

Plaintiff represents that it is working with Defendant to develop search terms to help narrow down the issues and reduce the burden and expense associated with expanding discovery. *Id.* The Court is inclined to permit limited, targeted discovery but reserves on this issue. The parties will meet and confer to discuss the scope of targeted discovery in accordance with D. Conn. L. Civ. R.

37(a). If an agreement cannot be reached, the Court will hear the parties on this issue during a discovery conference before any additional motion practice.

### 6. Request to Expand Discovery Beyond 9th Stage IBRs-Argument IV(F)

In another area of significant dispute, the parties disagree on the scope of discovery beyond 9th stage Integrally Bladed Rotors ("IBRs").  Plaintiff seeks production of all "responsive and relevant documents and information related to the thermal spray coating and testing of each of the IBRs, as they relate to testing failures and improperly sprayed IBRs." Pl. Brief at 27-28; *see* Pl. Let. 10/23/20 at  6.

Plaintiff contends that the false certifications of IBR spray-coating testing go beyond 9th stage IBRs because Defendant "used a single test piece sample to" pass quality control testing for multiple parts. Pl. Let. 10/23/20 at 3 (citing Pl. Ex. 4, PW 000026291 ("Under that all the parts that you plan to spray and pick a gun and set up that will fit all applications."); Pl. Ex. 5, PW000028809 ("We failed the weekly test conducted for KE coatings affecting several F135/F119 IBRs including some already installed at the Engine Center."), Pl. Ex. 6, PW000028888 (E-mail dated 11/18/15, subject line:"E166 Plasma Failure (F135 4[th], 5[th], 9[th]) "Can you provide details of failed test (MCL report) and location of application on IBRs for a quick response from engineering.")). Plaintiff asserts that "the comments of Rule 26 make clear that '[a] variety of types of information not  directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action." Pl. Let. 10/23/20 at 2-3 (quoting Fed. R. Civ. P. 26 (cmnts)).

Defendant objects to expanded discovery into different engine parts separate and apart from the claims concerning 9th -stage IBRs that relator has set out to plead with particularity in his complaint. Pratt argues that Plaintiff's "entire False Claims Act theory pleaded in the complaint hinges on relator's claim -based on his one day of observation at Pratt's Middletown facility- that he 'witnessed first-hand' defects in the "spray-coating techniques, processes and procedures being used

for the [9th stage] IBRs." Def. Let. 10/23/20 at 2 (citing FAC ¶¶48-49, 285-86). In the Fourth

Amended Complaint, Plaintiff states that "[e]very reference to IBRs in this Complaint refers to the

ninth stage IBR-the most critical and subject to the highest pressures-that are required to be spray-

coated and tested according to the requirements described herein." (ECF No. 96 at 3, n.4).

Defendant further argues that "[t]he complaint contains no reference to the 'geometry' of other

states of IBRs, and there are no allegations whatsoever that the geometry of those other stages

prevented the achievement of proper spray distances using the SG-100 spray gun." Def. Let.

10/23/20 at 2.

On the other hand, the Fourth Amended Complaint clearly alleges that "during a period from

at least 2012 through November, 2015, … [Defendants] falsely claimed that test samples for

Integrally Bladed Rotors ("IBRs") in the engine cores of F119 engines had passed quality controls as

required by the Contract …." (FAC ¶2). Plaintiff alleges that "Defendants have had knowledge of

their reliance on flawed spray coating techniques concealed by falsified tests for every F119 engine

supplied to the United States Air Force from at least 2012 through late 2014." *Id.* ¶20;; *see* ¶135

("All of the IBRs for the F119 engine cores provided to the Air Force under the Contract are and

were, at all times relevant to this Complaint (and until the fraud was uncovered as described herein)

coated and tested at PW's Middletown facilities, many by persons identified by number in this

Complaint."); ¶263 ("Relator was informed that suddenly the Middletown facility could not pass a

test piece for a knife-edge seals with PWA 53-37/53-11 coating used on IBRs for the F119

engine."); ¶325 ("The IBRs for the engine cores in the F119 engines for the Contract Award

ID#FA861108C2896 long-term sustainment contract were sprayed and tested in PW's Middletown

facility from at least as early as 2012."); ¶326 ("Clear evidence exists – not limited to the admissions

of PW personnel—that PW falsified sample testing for every IBR placed into an engine core for the

entirety of that time-period.").

Defendant points out that

> At the discovery conference, relator suggested documents pertaining to other stages of IBRs are needed to ascertain the amount of damages. But the different states of IBRs are stacked for inclusion in a single *engine*. Relator's allegations are that Pratt falsely certified testing upon delivery and claim for payment of *engines*. ECF 96, Fourth Am. Compl. ¶¶321-322. Pratt has produced-and, once it receives the government's permission, will be producing-documents with the engines containing 9th-stage IBRs, including invoices and DD250s addressing the number of engines delivered. Documents pertaining to the *engines* for which false certification of testing is alleged will thus be more than sufficient to ascertain any alleged damages. Discovery of documents pertaining to other stages of IBRs has no bearing on the issue of damages. It is simply an attempt by relator [to] develop new claims … not already identified in the pleadings." Mem. Opp. Overarching Motion 22, citing Fed. R. Civ. P. 26(b)(1) Adv. Comm. Notes & *Spay,* 2013 WL 4525226, at *4).

Def. Let. 10/23/20 at 2-3.[1] Defendant also objects to Plaintiff's argument that "Pratt's use of a 'single 'representative' test piece' for different parts should somehow open up discovery to all parts within 'an entire spray family.'" *Id.* at 3 (quoting Pl. Let. 10/6/20 at 1).

> Pratt has produced the documents establishing the test procedures and protocols used for its test spraying of sample parts. Relator thus has-and, with respect to the documents that the government has not yet released, will have-the documents pertaining to his claims that Pratt "cheated" on testing to cover up a supposed inability to spray 9th-stage IBRs in a contractually compliant manner. There is no need to expand discovery into other engine parts that make up no part of relator's claims in this case.

*Id.*

The Court agrees. Plaintiff did not address the points raised by Defendant in its letter brief dated October 23, 2020. Plaintiff's request to expand discovery beyond 9th stage IBRs is DENIED for the reasons stated by Defendants.

### 7.  Request for 35 Additional Custodians-Argument IV(G)
### Initial Disclosures

Plaintiff argues that Pratt refuses to "produce documents and information from numerous

---

[1] Indeed, during the discovery conference on October 13, 2020, Plaintiff's counsel explained that all of the IBR stages make up one engine. They further explained that a part cannot be tested without destroying it, so the only way to do quality testing is through a test piece. One test piece is utilized to certify multiple parts subject to spray coat testing, including 9th stage IBRs.

relevant custodians, including individuals listed on its very own Initial Disclosures as individuals likely to have discoverable information." (ECF No. 136 at 29-35). Bonzani states that "[m]ost of these individuals are currently, or previously were, Pratt employees responsible for the spray coating or testing of IBRs, or responsible for developing and/or monitoring the processes with which IBRs are spray coated or tested." *Id.* at 30.

Plaintiff argues that the Court should permit the discovery of an additional thirty-five (35) custodians because they appear on either Pratt's or Bonzani's initial disclosures.[2] (ECF No. 136, Ex. 36). Pratt responds that discovery of thirty-five (35) additional custodians is an "unnecessary and disproportionate burden and expense."[3]  *Id.*  Defendant argues that "[t]he 25 custodians already

---

[2] Plaintiff identified forty-one  (41) individuals who are likely to have discoverable information and Pratt identified forty-five individuals in their Initial Disclosures. Defendant agreed to conduct custodial searches of twenty-five (25) individuals. *See* Def. Brief at 28

[3] In support of its contention that this request poses a "disproportionate burden and expense," Pratt attached the Declaration of Sara Kornbluh, Senior Counsel at Pratt & Whitney, who is responsible for supervising the document collection, review, and productions in coordination with Pratt & Whitney's outside counsel and Pratt's third-party discovery vendor, Consilio. *Id.* Ex. 16. Attorney Kornbluh states that Pratt agreed to review and produce documents from twenty-five (25) custodians and also "made more targeted collections of categorical documents, responsive to particular requests, from other locations and other custodians." *Id.*, Ex. 16 ¶3. She did not specify who the "other custodians" are and whether Plaintiff has identified them in the request for discovery of an additional thirty-five custodians.  Attorney Kornbluh reports that Pratt has incurred "significant, ongoing expense." *Id.*, Ex. 16 ¶4. "To date, Pratt has paid its outside discovery vendor, Consilio, nearly $450,000 in electronic data-housing costs, costs for first-level responsiveness review by contract attorneys, and related production and support costs" and "outside counsel significant additional fees, and approximately $300,000 of that amount consists of fees relating to document collection, review and production." *Id.* According to Attorney Kornbluh,

> The total electronic discovery costs incurred by Pratt to date already exceed $750,000, or roughly $30,000 per custodian. Based on that experience, it is reasonable to estimate that each additional custodian would add approximately $30,000 to Pratt's discovery costs. If Pratt were required to review and produce documents from the additional 35 custodians, the total cost to Pratt to complete that endeavor could easily exceed an additional $1,000,000.

*Id.* ¶6. While the Court accepts Defendant's representation that discovery produced to date has been both voluminous and expensive to conduct, it questions Attorney Kornbluh's discovery cost

included in Pratt's [ESI] review are the people most likely to have information relevant to the claims

and defenses in this matter" and it should not have to undertake the additional expense <u>solely</u> on the

basis that the thirty-five proposed custodians are listed in the parties' initial disclosures. Def. Brief at

28.  Rule 26(a)(1)(A)(i), entitled "initial disclosures", provides that a party

> <u>must</u>, without awaiting a discovery request, provide to the other parties (i) the name,
> and if known, the address and telephone number of each individual likely to have
> discoverable information-along with the subjects of that information-that the
> disclosing party may use to support its claims or defenses, unless the use would be
> solely for impeachment.

Fed. R. Civ. P. 26(a)(1)(A)(i).

The Court reviewed the cases cited in Defendant's brief to support its claim that Plaintiff has

not met the burden to support an order compelling discovery of "additional custodians" and finds

these cases distinguishable on their facts. *See* Def. Brief at 28-29 (citing *Enslin v. Coca-Cola Co.,*

No. 2:14-CV-06476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016); *Fort Worth Emps. Ret. Fund*

*v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013)). In *Enslin*, plaintiff "was not

satisfied with Defendants' choice of custodians, and he asked the Court to compel [Defendants] to

search the ESI of an additional thirty-eight individual custodians as well as the ESI in the custody of

four departments and committees of The Coca-Cola Company." *Enslin*, 2016 WL 7042206, at *1.

Similarly, in *Fort Worth Employees' Retirement Fund*, the Defendants were "searching the

documents and e-mails of 42 custodians 'who were selected based on their roles with respect to

securitization, their appearance on a significant number of working group lists for the offerings at

issue,' and the defendants' own assessment of who was most closely involved in the securities at

---

calculation based on each additional custodian. Certainly not all of the discovery costs and legal fees
to date can be <u>*solely*</u> attributed to document searches related to twenty-five custodians, nor does
Attorney Kornbluh make that specific representation.

issue." *Fort Worth Emps. Ret. Fund.,* 297 F.R.D. at 105. At issue was Plaintiff's request to "expand that number by including an additional 30 individuals." *Id.*

Neither of these cases address ESI of custodians previously identified by the Defendant in its Rule 26(a)(1)(A)(a) initial disclosures.  The Court finds that the forty-five custodians listed in Defendant's initial disclosures are subject to an ESI document search.  These forty-five individuals are not "additional" custodians but the very individuals identified by Defendant as "likely to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). For these reasons, Plaintiff's "overarching" motion to compel discovery as to custodians identified in his initial disclosures is granted.

**Employees Referenced in the Fourth Amended Complaint and Plaintiff's Initial Disclosures**

Plaintiff also seeks an order compelling production of custodial documents from ten (10) Pratt employees referenced in Relator's Fourth Amended Complaint identified as Employee Nos. 7, 8, 10, 12-14, 20-22 and 24. *See* Pl. Brief at 31, n.16. The parties did not append the names of the forty-five (45) custodians identified in Defendant's initial disclosure, and Plaintiff has not identified the employees by name who are listed in the Fourth Amended Complaint, the Court cannot determine if it has already ruled on these custodians. Defendant did not specifically address Plaintiff's request to produce custodial documents from these ten employees listed in the Fourth Amended Complaint. The parties will meet and confer regarding this request and review the allegations contained in the Fourth Amended Complaint.[4] If an agreement cannot be reached, the Court will hear the parties on this issue during a discovery conference.

Last, Plaintiff argues that "many of the thirty-five (35) custodians appear on the most

---

[4] References to these ten employees can be found in the Fourth Amended Complaint as follows: Employee #7-¶¶73-74, 259-60; 345-48; and 363-365; Employee #8-¶¶343, 361; Employee #10-¶376; Employee #12-¶260; Employee #13-¶¶349, 366, 433, 443, 445-46; Employee #14-¶340; Employee #20-¶440; Employee #21-¶441; Employee #22-¶¶456, 458, 460; and Employee #24-¶252. Any renewal of this request will include an analysis of the allegations contained in the Fourth Amended Complaint and state whether the request has been mooted by this ruling.

important and damaging documents *that Pratt has produced to date . . .*" *Id.* at 30 (emphasis added). Specifically, Plaintiff identified five (5) custodians, Dennis Glynn, Samuel Wentworth, Matthew McCormack, Barry Kessler and David Bonsall, and explained why these custodians are relevant to this case and attached documents to support the explanation. *See id.* Ex. 37, 38, 39, 40, 41. The Court has carefully reviewed Plaintiff's request as to these five (5) additional custodians, and the exhibits appended in support, and rules as follows.

Plaintiff's request as to Dennis Glynn is GRANTED. Plaintiff appended Exhibit 37, an e-mail chain addressed to various employees, including Dennis Glynn, from November 18, 2015 through November 19, 2015, "Subject: E166 Plasma Failure (F135 4th, 5th, 9th). (ECF No. 136, Ex. 37 (PW000026091-PW000026096). Mr. Glynn is copied on the e-mail chain along with nine (9) other employees. Rick Shamakian wrote "This is the worst PWA 53-37 coating this writer has ever seen." *Id.* (PW000026091).  Mr. Glynn does not author any exchange in this e-mail chain. Nevertheless, the Court notes that in Exhibit 39 at PW000025975, "MCL ["Materials Control Lab"]: Dennis Glynn" is identified on a document entitled "Steps to Qualify EH [East Hartford] to Spray Plasma." Mr. Glynn was also identified by Pratt on in its initial disclosures. The Court finds that Plaintiff has demonstrated a sufficient basis to add Mr. Glynn to the custodian list.

Plaintiff's request as to Samuel Wentworth is GRANTED. Plaintiff states, and Exhibit 38 shows, that Pratt's list of testing results, PW000025846, "demonstrates that knife edge seal tests began failing on November 16, 2015, and that Samuel Wentworth was in charge of analyzing the test results." *Id.* at 30. In addition, Mr. Wentworth was identified on Pratt's initial disclosures.  The Court finds that Plaintiff has demonstrated a sufficient basis to add Mr. Wentworth to the custodian list.

Plaintiff's request as to Matthew McCormack is GRANTED. Plaintiff states, and Exhibit 39 shows, that "In a Powerpoint of Pratt's analysis of the testing failure on November 19, 2015,

PW000025970…Matthew McCormack is listed as the individual responsible for investigating potential cause of the failed tests. *See* PW000025972. Further, Mr. McCormack is listed in Pratt's initial disclosures. The Court finds that Plaintiff has demonstrated a sufficient basis to add Mr. McCormack to the custodian list.

Plaintiff's request as to Barry Kessler is DENIED on the current showing. Mr. Kessler is a recipient of an e-mail chain dated May 20, 2016, concerning an update to the F119 and F135 9th stage IBRs, PW000026645-47, Exhibit 40. The list of e-mail recipients is too numerous to count and take up nearly two pages of the exhibit. *See* PW000026645-47. Mr. Kessler was <u>not</u> listed by Pratt in its initial disclosures. Plaintiff offers no other basis for adding Mr. Kessler to the list of custodians other than as a recipient on this e-mail.

Plaintiff's request as to David Bonsall is GRANTED. Plaintiff states, and Exhibit 41 demonstrates, that Mr. Bonsall is a recipient on a Pratt e-mail dated February 4, 2016, involving certain issues with the plasma spray coating on commercial engines that should be fixed similarly to those issues that affect the F119 and F135 engines at Middletown. It appears from the document that Mr. Bonsall is part of a team addressing the issues. *See* PW000025862. In addition, Mr. Bonsall is listed on Pratt's initial disclosures. The Court finds that Plaintiff has demonstrated a sufficient basis to add Mr. Bonsall to the custodian list.

For the reasons stated, Plaintiff's Request for Production for another thirty-five (35) custodians is GRANTED in part and DENIED in part. The request is GRANTED as to the individuals listed in Plaintiff's and Defendant's initial disclosures and as to custodians Dennis Glynn, Samuel Wentworth, Matthew McCormack, and David Bonsall. Defendant will propose a reasonable schedule to provide responses to these discovery requests before the next discovery conference.

### 8.   Invoices and Certificates of Conformance-Argument IV(H)

18

Plaintiff seeks an order compelling Defendant to produce all relevant invoices and Certificates of Conformance sent to the government for payment of F119 engines. Pl. Brief at 32-33. Plaintiff states, and Defendant does not dispute, that "[t]he Contract expressly requires Pratt to submit such certificates of conformance with all requests for payment. *See* 48 C.F.R. §52.246-14; 52.246-15." *Id.* at 33. Defendant will propose a reasonable schedule to provide responses to these discovery requests before the next discovery conference.

### 9.    Privileged Documents-Argument IV(I)

As a preliminary matter, Plaintiff's request for classified documents relating to the F135 Program is moot. *See* (ECF No. 168 (Uncontested Motion to Strike)). It is unclear whether there are other documents that have been withheld as classified unrelated to the F135. Defendant will indicate in writing whether any other documents are being withheld as classified unrelated to the F135.

**Subject Matter Waiver**

Next, Plaintiff challenges Pratt's selective production of communications between in-house counsel relating to Pratt's investigation into Bonzani. He asserts that Pratt has waived privilege over the subject matter of these communications.

> In the Second Circuit, it is well settled that a "subject matter waiver ... rests on the fairness considerations at work in the context of litigation." *In re von Bulow,* 828 F.2d 94, 103 (2d Cir.1987). "For this reason, it ... has been invoked most often where the privilege-holder has attempted to use the privilege as both 'a sword' and 'a shield' or where the attacking party has been prejudiced at trial." *Id.* The reasons for a subject matter waiver "clearly are directed to a situation where the holder of the privilege affirmatively seeks to use privileged testimony while preventing the opposite side from seeing the context or the remainder of the communication." *In re Shearman & Sterling,* Nos. 2–124, M8–85, C84–3894, & C84–743, 1986 WL 6157, at *1 (S.D.N.Y. May 30, 1986).

*Travel Insured Int'l, Inc. v. iTravelinsured, Inc.,* No. 3:05CV1305 (MRK), 2005 WL 4012814, at *1 (D. Conn. Nov. 28, 2005).

> It would be unfair to allow a client to assert the attorney-client privilege and prevent disclosure of damaging communications while allowing the client to disclose other

selected communications solely for self-serving purposes. *See Handgards, [Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 929 (N.D. Cal. 1976)]; *International Telephone and Telegraph Corp. v. United Telephone*, 60 F.R.D. 177, 185-86 (M.D. Fla.1973). Therefore, if a client chooses to disclose some privileged communications between the attorney and himself, then he waives the remainder of the communication which relate to the same subject matter. See *Haymes v. Smith*, 73 F.R.D. 572, 577 (W.D.N.Y. 1976). *See also Handgards*, 413 F. Supp. at 929; *In re Penn Central Commercial Paper Litigation*, 61 F.R.D. 453, 464 (S.D.N.Y. 1973); *International Telephone*, 60 F.R.D. at 185-86; *Lee National*, 313 F. Supp. at 227.

*Smith v. Alyeska Pipeline Serv. Co.,* 538 F. Supp. 977, 979–80 (D. Del. 1982), *aff'd,* 758 F.2d 668 (Fed. Cir. 1984), *cert. denied,* 471 U.S. 1066 (1985).

Plaintiff argues there has been subject matter waiver of the attorney client privilege because Pratt produced certain communications between in-house counsel related to the investigation into Bonzani, while withholding other communications between in-house counsel on the same subject matter. He argues that "[t]hese communications were used as part of the body of information affirmatively used by Pratt to terminate-and justify the termination of -Mr. Bonzani. Bonzani has alleged and maintained that Pratt's suspension of him was pretext; an attempt to cover up its fraudulent testing, which Bonzani discovered and disclosed on the very day of his suspension." Pl. Brief at 34. Bonzani argues that Pratt "should not be permitted to rely upon only a selective number of documents-and in some instances, redact portions of the documents it has produced." *Id.* (citing Pl. Ex. 42 (PW000026505 (partially redacted e-mail from Pratt in-house counsel marked "privileged & confidential" regarding an "Dec. 1 interview with the employee"), Ex. 43 PW000009043 (redacted e-mail between Pratt in-house counsel re: "Coatings-Interview Summaries, remaining questions/concerns, next steps"), Ex. 44 PW000003232 (unredacted e-mail from Pratt in-house counsel to Human Resources re: Government Security input on Bonzani provided "from my Govt Security role, not my legal role"), Ex. 45 PW000003237 (unredacted forensic investigator's report e-mailed to Pratt in-house counsel re: Bonzani's laptop), Ex. 46 PW000008650 (unredacted e-mail between Pratt in-house counsel with a link to a Hartford Courant article).

Only two of the documents submitted by Plaintiff contain redactions. See Pl. Ex. 42 and 43. Plaintiff's Exhibit 42 is an e-mail dated November 19, 2015 from Emily Poulin, Pratt Associate Counsel, to two other Pratt in-house attorneys, a human resources employee and a Pratt Government Security employee. The subject line states "Privileged-EE Investigation"; and the first line in the body of the e-mail states it is "Privileged & Confidential" and states in part, "Been working with GSC this morning about our plan for Dec 1 interview with the employee. Two things: …" Subpart (a) is redacted while the remainder of the e-mail is not redacted. Plaintiff's Exhibit 43 is an e-mail from Emily Paulin, Pratt Associate General Counsel dated March 15, 2016, forwarding an e-mail to Robert Jenkins, Pratt counsel, entitled "FW:87244 Coatings-Interview Summaries, remaining questions/concerns, next steps." The first two lines of the e-mail state "Privileged & Confidential" "Attorney-Client Communication." *Id.*

> The "common denominator" of subject matter wavier is that "in each instance, the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party." *Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D. Wash. 1975) (cited, though not quoted, in *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir. 1991)). Factors bearing on the inquiry include whether "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *In re Kidder Peabody Securities Litigation,* 168 F.R.D. 459, 470 (S.D.N.Y. May 16, 1996) (internal quotation marks omitted) ("Kidder has waived the privilege by its repeated injection of the substance of the report into this and other litigations….").

*Travel Insured Int'l, Inc.,* 2005 WL 4012814, at *1.

Pratt argues that it has not "selectively produced any privileged documents." Pl. Brief at 33; Def. Brief at 34. Rather, it has reviewed attorney-client communications and withheld and/or redacted communications that contain legal advice. *Id.* "Where a communication primarily relates to business matters, Pratt has produced the communication." *Id.* at 34-35. "Pratt has simply engaged in

the 'necessarily fact specific' task of determining whether each 'particular communication' with an

in-house lawyer satisfies the elements of the attorney-client privilege." Def. Brief at 34 (citing *ABB*

*Kent-Taylor, Inc. v. Stallings & Co.,* 172 F.R.D. 53,555 (W.D.N.Y. (1996)).

> "The party invoking the attorney-client privilege must show (a) a communication
> between client and counsel; (b) was intended to be and was in fact kept confidential;
> and (c) was made for the purpose of obtaining or providing legal advice." *County of
> Erie,* 473 F .3d at 419. The party invoking the privilege bears the burden of
> establishing all of the elements of the privilege. *See United States v. Int'l Bhd. of
> Teamsters,* 119 F.3d 210, 214 (2d Cir. 1997).
>
> While the standard for determining whether a communication is protected by the
> attorney-client privilege is straightforward, the application of that standard sometimes
> requires nuance. The line between legal advice and non-legal advice is hazy. In
> particular, the line between business advice and legal advice is blurry when an
> attorney work[s] in-house for a corporate client. *See County of Erie,* 473 F.3d at 419.
> In the specific context of communications to and from corporate in-house lawyers,
> courts therefore typically hold that a communication is privileged only if it was
> generated for the *predominant purpose* of rendering or soliciting legal advice. *See id.*
> at 420 & n. 7 (emphasis added) (citing, *inter alia,* 24 Charles Alan Wright & Kenneth
> W. Graham, Federal Practice and Procedure § 5490 (1986)).

*Weinstein v. Univ. of Connecticut*, Civ. No. 3:11CV1906 (WWE)(HBF), 2013 WL 2244310, at *5

(D. Conn. May 21, 2013).

The standards for subject matter waiver are not met in this case. The Court has carefully

reviewed Plaintiff's Exhibits 42-46 and does not find a "purposeful injection of a privileged

document" in this case. *Travel Insured Int'l, Inc.,* 2005 WL 4012814, at *2 ("Here, there was no

purposeful injection of a privileged document in the arbitration."). The Court finds that Plaintiff's

Exhibits 42-46 do not contain a communication seeking, reflecting or revealing legal advice such

that a subject matter waiver has been invoked.

With regard to Exhibit 42, the only redaction in the e-mail is part (a), in which Pratt asserts

that in-house counsel Poulin "conveyed specific legal analysis and a discussion of legal obligation."

Def. Brief at 35. Similarly, with regard to Exhibit 43, Attorney Poulin "forwarded the underlying e-

mail to a different Pratt in-house lawyer-Robert Jenkins-and communicated with  him for the

purpose of obtaining *Attorney* Jenkins' legal advice." Def. Brief at 35. The Court cannot discern without an *in camera* review of Exhibits 42 and 43 whether Defendant's redacted attorney-client communications are subject to the privilege. Accordingly, Defendant will submit Exhibits 42 and 43 in unredacted form for *in camera* review along with a statement setting forth the basis for asserting the privilege. The Court will address this issue at or before the next discovery conference.

### Crime-Fraud Exception

Plaintiff next argues that these documents are also discoverable under the crime-fraud exception. Pl. Brief at 34.

> Communications that otherwise would be protected by the attorney-client privilege "are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *In re Grand Jury Subpoena Duces Tecum (Mark Rich),* 731 F.2d 1032, 1038 (2d Cir.1984). In order for the crime-fraud exception to apply, the party seeking to overcome the privilege has the burden of "showing probable cause to believe that a crime or fraud had been committed and that the communications were in furtherance thereof." *Id.* at 1039. Probable cause exists when a "prudent person" would have "a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." *Id.*

*Cendant Corp. v. Shelton*, 246 F.R.D. 401, 405 (D. Conn. 2007).

Plaintiff argues that he has alleged sufficient facts in the Fourth Amended Complaint to support a finding of probable cause "that Pratt was committing fraud through its false claims submitted to the government." Pl. Brief at 35 (citing FAC, ECF No. 96 at ¶¶1-3). Further, he contends the suspension and termination of his employment is part of the fraud and Pratt's effort to conceal it. *Id.* (citing FAC at ¶¶355-80). Plaintiff argues that "[b]ased on the selectively-produced communications of in-house counsel, it is clear that counsel (and the chief compliance officer) played a central role in these efforts." *Id.* Plaintiff contends the following timeline demonstrates that "Pratt's in-house counsel [were] expediting the investigation, suspension and termination of Bonzani

23

on the very day that he disclosed the fraud, cannot be seen as anything but being done in furtherance of the fraud." *Id.* at 35-36 (citing Pl. Ex. 11, 45, 47 and 48).

- "In September 2015, Pratt received an ombudsman complaint that Bonzani had been 'stealing' Pratt's classified spray coating information and using it for his consulting business." *Id.* (citing PW000008716 Pl. Ex. 47).

- "Despite this truly serious allegation, Pratt's in-house counsel felt comfortable 'slow-playing' their investigation with no urgency. In fact, the initially scheduled meeting with Bonzani was not set until December 1, 2015." *Id.* (citing PW000025505 Pl. Ex. 45).

- "Yet, by some coincidence, on the afternoon of Bonzani's visit to the Middletown facility and discovery of the fraud, Pratt's in-house counsel communications shows urgency, and the head of compliance agrees to forego her vacation to meet with Bonzani on Tuesday November 24, 2015." *Id.* (citing PW00003177 Pl. Ex. 48).

- "At 10:31pm on the same day, after Mr. Bonzani has discovered and disclosed the fraud to his superiors, Pratt's head of compliance demands-purportedly at the urging of in-house counsel-that they 'interview the employee as soon as possible and take immediate action to remove him from the facility and to take back his UTC assets (computer, cell phone, and facility access cards) during the pendency of the investigation.'" *Id.* (citing PW000003156 Pl. Ex. 11).

Defendant first responds that this issue is not ripe for resolution by the Court because Plaintiff "never once made *any* attempt to meet-and-confer with Pratt regarding his plans to invoke the crime-fraud exception; the first mention of the doctrine was in a single sentence in relator's 11-page March 4 discovery letter. " Def. Brief at 36 (citing Pl. Ex. 1 at 6). Moreover, Defendant argues that "the actual evidence raises no inference that communications with counsel were in furtherance of a fraud." Def. Brief at 37. Defendant provided the following timeline to demonstrate the flaws in

24

Plaintiff's argument and interpretation of the timeline. *Id.* (citing Def. Ex. 9, 10, 23).

- "The truth is, on November 18, the day *before* relator's visit to Middletown, the Pratt personnel investigating Bonzani's misconduct interviewed his supervisor, Brad Walsh, and heard for the first time that 'Brad had no idea' about any outside business interests of Bonzani, because Bonzani had never disclosed them to Walsh." *Id.* (citing PWW000009034 Def. Ex. 9).

- "At 10:28 AM, the next day, the head of compliance agreed to take time out of her vacation to participate in an interview of Bonzani." *Id.* (citing PWW000008331 Def. Ex. 10).

- "At 10:38 AM, the attorney working on the investigation noted that the team's 'heightened suspicions … following the surprise from Brad Walsh' made it untenable to 'keep letting [Bonzani] work in the rooms where he works-or anywhere at PW-' and stated that Pratt 'need[ed] to put [Bonzani] on paid leave until he can talk to him." *Id.*

- "Before 10:45 AM on November 19-when any allegations about fraud in Middletown were still but a twinkling in Bonzani's eye-the head of compliance suggest 'mov[ing] the interview [of Bonzani] up to today or tomorrow." *Id.* (citing Def. Ex. 10).

- "There was no late afternoon e-mail from 'the head of compliance agree[ing] to forego her vacation." *Id.* (citing Pl. Mem. at 35 (citing PW00003177 Pl. Ex. 48)).

- "The '10:31 PM' e-mail from the 'head of compliance demand[ing]' that Pratt 'take immediate action," *see id.* [Pl. Memo at] 35-36, was actually sent at 5:30 in the afternoon, and was just confirming the details of the interview set for the next day." *Id.* (citing Def. Ex. 23).

Defendant argues that Plaintiff is confused about the timeline and if he "had raised the issue in a meet-and-confer, Pratt could have explained the fatal flaw in relator's crime-fraud argument (not

to mention his retaliation claim), and perhaps unnecessary motion practice could have been avoided." *Id.* at 35-36. Defendant accurately points out the discrepancy in Plaintiff's timeline analysis. Defendant's Exhibit 10, is an e-mail from Pratt in-house counsel Jane O'Neill dated November 19, 2015 at 10:20 AM which states in relevant part, "I am on vacation on Tuesday with an appointment in Branford in the morning but I will make myself available Tuesday afternoon." Def. Ex. 10 at PW000008832. Compare this e-mail to Plaintiff's Exhibit 23 PW000003177, which is the same e-mail but indicates that the e-mail was sent at 3:29 PM. Defendant states that Plaintiff's "apparent confusion about the timeline may have resulted because, as is frequently the case with e-mail productions, the top e-mail in the image of each e-mail chain included in Pratt's document productions displays Coordinated Universal Time, five hours ahead of Connecticut time." *Id.* at 37.

Defendant's argument is reasonable and undermines the documents cited in support of Plaintiff's argument under the crime-fraud exception. The parties will meet and confer in accordance with D. Conn. L. Civ. R. 37(a). To the extent that the parties seek clarification and/or resolution of a matter not addressed in this ruling, they are directed first to confer and then, if necessary, raise the issue in a discovery conference with reference to the specific document, in accordance with the D. Conn. L. Civ. P. Rule 37(b)(1).

### 10. Custodial and Non-Custodial Data Sources-Argument IV(J)

Plaintiff seeks a "list identifying the custodial and non-custodial files and data sources that have been searched and reviewed, as well as the date on which each source was preserved." Pl. Brief at 36. Plaintiff argues that this discovery is warranted because "Defendant has only produced 5,000 documents thus far, has produced only a couple e-mails from Relator's custodial file, and has continued to play a game of discovery hide-and-seek." Pl. Reply 14.

The Court agrees with Defendant that Plaintiff has not demonstrated a basis to conduct discovery on discovery. Defendant has indicated that it has not completed document production.

Plaintiff's request "to make a determination as to the efforts made by Pratt" is an insufficient basis and the Court believes that the parties can engage in a good faith conversation to address some of Plaintiff's concerns. Accordingly, the parties will participate in an informal meet and confer and if necessary, and within the bounds of an informal meet and confer, include a Pratt representative who can address the search process and the manner in which information is maintained at Pratt and specifically the preservation of text data, e-mails and other November 2015 production issues identified by Plaintiff. Any effort to address this issue with the Court, after a meet and confer, will be at a discovery conference.

With regard to the timing of the litigation hold,  Plaintiff requested a copy of Bonzani's personnel file on Friday, February 26, 2016. Pratt's placement of a litigation hold in March 2016 was not unreasonable. Nevertheless, because Plaintiff states that Pratt utilizes a 60-day automatic deletion of e-mails Defendant will provide the specific date when it issued a litigation hold.

### 11.  Responses to Interrogatories and Requests for Production-Argument IV (K)

Plaintiff next expresses frustration with the pace with which Defendant is responding to interrogatories and requests for production and its assurances of "working to complete its production as soon as possible." Pl. Reply at 20 (quoting Def. Brief at 40).  Defendant states that  "[s]ince the briefing on the motion to compel was completed, Pratt has produced thousands of pages of additional documents …." Def. Let. 10/6/20 at 3.  Additionally,  "Pratt has been seeking the release of more than 600 documents that remain pending before the DOD's F-35 Joint Program Office ('JPO')."  *Id.* Defendant further states that  "[o]nce that release is provided, Pratt will be in a position to complete its production, serve an updated privilege log, and update its interrogatory response, and additional discovery in this case will be able to proceed in an orderly fashion." *Id.* The Court at this time accepts Defendant's representations. Defendant will update the Court at the next discovery conference.

**B. PLAINTIFF'S MOTION TO COMPEL RESPONSE TO RELATOR'S FIRST REQUEST FOR INSPECTION & EXHIBITS THERETO (ECF No. 137)**

During the discovery conference on October 13, 2020, Defendant stated that it has no objection to an inspection. The parties stated they had not discussed the parameters for the inspection such as date, time of day, appropriate clearances or who would attend the inspection.  Clearly the parties are better qualified than the Court to set those parameters.

Accordingly, Plaintiff's Motion to Compel **(ECF No. 137)** is **DENIED as MOOT but without prejudice.** The parties will meet and confer to discuss the parameters for the inspection in accordance with D. Conn. L. Civ. R. 37(a). If an agreement cannot be reached, the Court will hear the parties on this issue during a discovery conference.

**C. PLAINTIFF'S MOTION TO COMPEL RESPONSE TO RELATOR'S FIRST REQUEST OF INTERROGATORIES & EXHIBITS THERETO (ECF No. 138)**

In light of the Court's ruling on the overarching discovery issues set forth above, the parties will meet and confer to discuss the remaining discovery issues, if any, in accordance with D. Conn. L. Civ. R. 37(a). If an agreement cannot be reached, the Court will hear the parties on this issue during a discovery conference and before any additional motion practice.

To the extent that the parties seek clarification and/or resolution of a matter not addressed in this ruling, they are directed first to confer and then, if necessary, raise the issue in a discovery conference with reference to the specific interrogatory, request for production and/or request for inspection, in accordance with the D. Conn. L. Civ. P. Rule 37(b)(1).

Accordingly, a ruling on  Plaintiff's Motion to Compel **(ECF No. 138)** is **DENIED without prejudice** as outlined above.

D. **PLAINTIFF'S MOTION TO COMPEL RELATOR'S SECOND AND THIRD SETS OF REQUESTS FOR PRODUCTION & EXHIBITS THERETO (ECF No. 139)**

In light of the Court's ruling on the overarching discovery issues set forth above, the parties will meet and confer to discuss the remaining discovery issues, if any, in accordance with D. Conn. L. Civ. R. 37(a). If an agreement cannot be reached, the Court will hear the parties on this issue during a discovery conference and not through additional motion practice.

To the extent that the parties seek clarification and/or resolution of a matter not addressed in this ruling, they are directed first to confer and then, if necessary, raise the issue in a discovery conference with reference to the specific interrogatory, request for production and/or request for inspection, in accordance with the D. Conn. L. Civ. P. Rule 37(b)(1).

Accordingly, a ruling on Plaintiff's Motion to Compel **(ECF No. 139)** is **DENIED without prejudice** as outlined above.

IV. **CONCLUSION**

As set forth above, Plaintiff's Motion to Address Overarching Deficiencies in the Discovery Responses of Defendant United Technologies Corporation, Pratt & Whitney Division and to Compel Defendant to Provide Complete Responses to Relator's Discovery **(ECF No. 136)** is **GRANTED in part and DENIED in part.**

Plaintiff's Motion to Compel Response to Relator's First Request for Inspection **(ECF No. 137)** is **DENIED as MOOT**.

A ruling on Plaintiff's Motion to Compel Responses to Relator's First Set of Interrogatories **(ECF No. 138)** is **DENIED without prejudice** as outlined above**.**

A ruling on Plaintiff's Motion to Compel Response to Relator's Second & Third Sets of Requests for Production **(ECF No. 139)** is **DENIED without prejudice** as outlined above.

To the extent that the parties require further discovery, they are directed to meet and confer

regarding the scope of remaining discovery needed in light of this Ruling and Order. *See* D. Conn. L. Civ. R. 37(a). Unless directed otherwise, "compliance with discovery ordered by the Court shall be made within fourteen (14) days of the filing of the Court's order." D. Conn. L. Civ. R. 37(d).

The parties are also ordered, by **January 5, 2020**, to file a joint status report. The status report should include outstanding discovery issues, if any, left unresolved by this Ruling and Order, as well as a proposed schedule. The proposed schedule should include dates for the close of discovery, a discovery conference, the filing of dispositive motions, any responses or replies to any dispositive motions, the joint trial memorandum, and trial-ready date.

The Court will hold a virtual discovery/scheduling conference on **January 12, 2021 at 10:00 a.m.**

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED, this 14th day of December 2020, at Bridgeport, Connecticut.

/s/ *William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge